**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

- and -

8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs Henry Yeh,*
*Jeremy Rynca, and Kathy Braun and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| HENRY YEH, JEREMY RYNCA, *and* KATHY BRAUN, *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>SINEMIA INC.,<br><br>Defendant. | Case No. 19-cv-2145<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Henry Yeh, Jeremy Rynca, and Kathy Braun (collectively, "Plaintiffs") bring this Class Action Complaint against Sinemia Inc. ("Sinemia" or "Defendant"), and respectfully allege as follows. Plaintiffs base the allegations herein on personal knowledge as to matters related to, and known to, them. As to all other matters, they base their allegations on information and belief, through investigation of their counsel. Plaintiffs believe substantial evidentiary support exists for their allegations and seek a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. Sinemia is a provider of pre-paid subscriptions that promise purchasers they could obtain discount tickets to movies playing in theaters ("Subscriptions").

2. This case involves two patterns of wrongful conduct by Sinemia.

3. First, Sinemia has wrongly and systematically prematurely terminated the Subscriptions of consumers – such as Plaintiffs Yeh and Rynca and similarly situated consumers (the "Termination Class," as defined below) who paid for Sinemia Subscriptions.  Sinemia then refused to provide refunds adequately compensating the Termination Class members for the premature termination of their Subscriptions.

4. Second, Sinemia has unfairly and unjustifiably charged the bank or credit card accounts of Plaintiff Braun and other similarly situated consumers (the "Forced Charges Class," as defined below). Plaintiff Braun and each of the Forced Charges Class members purchased Subscriptions from Sinemia, cancelled the Subscriptions, and then obtained a refund of the purchase price for the Subscriptions from their bank (or another third party). Subsequently, Sinemia unfairly and unjustifiably re-charged Ms. Braun and each of the Forced Charges Class members. Sinemia has refused to provide Ms. Braun or the Forced Charges Class members with any refunds for the improper subsequent charges.

5. Plaintiffs bring this action individually and on behalf of the Termination Class and Forced Charges Class members to stop Defendant's unlawful practices, seeking declaratory relief, public injunctive relief, and monetary relief, including but not limited to restitution, and such further relief as the Court may deem just and proper.

## PARTIES

**Plaintiff Henry Yeh**

6. Plaintiff Henry Yeh resides in San Francisco, California.

7. On July 31, 2018, Mr. Yeh purchased an annual Sinemia Premium Subscription for $179.88. Mr. Yeh paid the full cost of the annual Subscription at the time of the purchase.

8. Because Mr. Yeh elected not to pay a fee to expedite activation of his Subscription, Sinemia did not activate his account until August 14, 2018.

9. Based on Defendant's marketing of the Subscription, Mr. Yeh believed and understood that he would be able to use his "annual" Subscription for a full year.

10. On March 23, 2019, well in advance of the expiration of his annual Subscription (for which he had prepaid in full), Mr. Yeh attempted to purchase a movie ticket using his Subscription.

11. On doing so, Mr. Yeh discovered that Sinemia had unilaterally terminated his Subscription, despite the fact that Mr. Yeh had always used his Subscription for its intended purposes; had not engaged in any form of fraudulent activity with respect to his Sinemia account or Subscription (and, indeed, had not engaged in any form of activity that could give rise to even a reasonable suspicion of fraud or abuse of the Subscription); had not used multiple Sinemia Subscriptions on the same device; had not shared his Sinemia membership information to purchase tickets for any other person; had not manipulated his location data; and had not otherwise done anything unscrupulous, deceptive, or inappropriate with his Sinemia account or Subscription.

12. Specifically, on March 23, 2019, Sinemia sent Mr. Yeh the following message:

> Dear Sinemia member,
>
> This is an important notice that requires your attention.
>
> Our top priority is to provide our members with the best movie-going experience possible in the most affordable way. In order to achieve this goal, it is very important for our members to comply with the membership rules and abide by the terms of service.
>
> Sinemia has put several systems and measures in place in order to prevent fraud and keep Sinemia's membership sustainable and affordable.

> Upon reviewing your account, we regret to inform you that the system has detected examples of your membership use that violates the terms of service. As a result, your account has been terminated. An account may be terminated, but not limited to, for the following reasons:
>
> - Unauthorized use of the Sinemia card/cardless outside of its intended purposes, resulting in fraudulent financial activity
> - The use of multiple Sinemia accounts in the same device resulting in financial abuse
> - Reasonable suspicion of fraud and/or abuse
> - Sharing one's Sinemia membership information to purchase tickets for other persons.
> - Manipulation of location data resulting in deceptive ticket purchases
>
> You may review the usage terms of your account on our website if you would like to seek further information. Given the circumstances, please note that you will not be able to create further accounts with Sinemia.
>
> Best regards,
> Sinemia
>
> Sinemia issues a full refund for the difference between a user's membership payment & fees and ticket purchases to the user`s payment card.

13. Mr. Yeh responded with an email to Sinemia customer support stating that Sinemia's proposed refund terms were unacceptable because the proposed refund terms ignored the remaining five months of his Subscription, which he had prepaid for but was now unable to use and which Mr. Yeh calculated were worth $74.95.

14. On March 26, 2019, Sinemia customer support sent Mr. Yeh an email that stated:

> Hi, we will not be able to discuss this any further as stated above. If you need assistance on a different topic, please let us know.
>
> Best regards,
>
> Tony
> Sinemia Support Team

15. As the foregoing shows, Sinemia unilaterally, and unjustifiably prematurely terminated Mr. Yeh's Sinemia Subscription and refused to provide him a full or sufficient refund.

**Plaintiff Jeremy Rynca**

16. Plaintiff Jeremy Rynca resides in Waterford, Michigan.

17. On January 4, 2019, Mr. Rynca purchased an annual Sinemia Subscription, which would allow two people to see three movies per month, for $215.88. Mr. Rynca paid the full cost of the annual Subscription at the time of the purchase.

18. On January 4, 2019, Mr. Rynca also paid an extra $9.99 for accelerated activation of his Subscription because he wanted to see a movie that night.

19. Sinemia did not activate Mr. Rynca's Subscription until January 5, 2019.

20. Based on Defendant's marketing of the Subscription, Mr. Rynca believed and understood that he would be able to use his "annual" Subscription for a full year.

21. On January 11, 2019, Sinemia began charging Mr. Rynca per-movie fees (including "processing fees" and, later, "convenience fees") over and above the purchase price of his Subscription, to see movies.

22. On March 2, 2019, well in advance of the expiration of his annual Subscription (for which he had prepaid in full), Mr. Rynca attempted to purchase a movie ticket using his Subscription.

23. On doing so, Mr. Rynca discovered that Sinemia had unilaterally terminated his Subscription, despite the fact that Mr. Rynca had always used his Subscription for its intended purposes; had not engaged in any form of fraudulent activity with respect to his Sinemia account or Subscription (and, indeed, had not engaged in any form of activity that could give rise to even a reasonable suspicion of fraud or abuse of the Subscription); had not used multiple Sinemia Subscriptions on the same device; had not shared his Sinemia membership information to purchase tickets for any other person; had not manipulated his location data; and had not otherwise done anything unscrupulous, deceptive, or inappropriate with his Sinemia account or Subscription.

24. More specifically, on March 2, 2019, Sinemia sent Mr. Rynca a message via the

app that it uses to provide the Subscription service, which directed Mr. Rynca to a form letter on Sinemia's website that was materially similar in language and content to the form letter that Sinemia sent to Mr. Yeh, discussed above.

25.    Mr. Rynca attempted to contact Sinemia customer support several times to understand what had happened to his Subscription, with no response. His last attempt to reach Sinemia customer support was on March 22, 2019, and he received no response.

26.    As the foregoing shows, Sinemia unilaterally and unjustifiably prematurely terminated Mr. Rynca's Sinemia Subscription and did not provide him a full or sufficient refund.

**Plaintiff Kathy Braun**

27.    Plaintiff Kathy Braun resides in Santee, California.

28.    Ms. Braun is a retired schoolteacher.

29.    On September 21, 2018, Ms. Braun purchased an annual Sinemia Subscription from Defendant for $359.88. Ms. Braun paid the full price at the time of the purchase.

30.    When signing up for and purchasing the Subscription, Ms. Braun did not realize, and Sinemia's marketing of the Subscription did not prominently and conspicuously inform her, that Sinemia was also going to charge her per-movie fees over and above the price of her Subscription, to see movies.

31.    Ms. Braun did not see a single movie with her Sinemia Subscription.

32.    Instead, after she had discovered that Sinemia would charge her additional per-movie fees (which Sinemia had not sufficiently disclosed prior to Ms. Braun's purchase), she immediately sought to cancel her Subscription. Ms. Braun was eventually successful in her attempts to cancel her Subscription.

33.    Ms. Braun disputed the September 21, 2018, purchase with her bank, and her bank honored the dispute and refunded her the full amount of the September 21, 2018, purchase.

34.    On September 22, 2018, Sinemia charged Ms. Braun's credit card an additional $359.88. The transaction was labeled "REVERSE IYZICO-SINEMIA.COM ISTANBUL" and stated that it was in the category "BUSINESS SERVICES, NOT ELSEWHERE CLASSED."

35.    Ms. Braun has sought a refund from Sinemia of the $359.88 charge of September

22, 2018, and Sinemia has refused to refund her the money.

36. Ms. Braun has also disputed the September 22, 2018, charge with her bank. The bank initially indicated it would help her obtain a refund of the money. However, Sinemia refused to cooperate with the bank or provide Ms. Braun with any refund of the September 22, 2018, charge. After Sinemia had refused to cooperate with the bank or provide any refund, the bank indicated it will take no further action.

37. As the foregoing shows, Sinemia has unilaterally and unjustifiably taken $359.88 from Ms. Braun and has refused to refund her the money.

**Defendant Sinemia Inc.**

38. Defendant Sinemia Inc. is a corporation organized under the laws of Delaware.

39. Sinemia Inc.'s principal executive office is located at 925 North La Brea Avenue, Fourth Floor, Los Angeles, California 90038. SEC'Y OF STATE, STATE OF CAL., *Statement of Information (Foreign Corporation): Sinemia Inc.* (Feb. 24, 2018), *available at* http://bit.ly/2GnpTGE.

## JURISDICTION AND VENUE

**Jurisdiction**

40. This Court has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiff Rynca is a citizen of Michigan and Defendant is a citizen of Delaware and California, at least one member of the plaintiff class is a citizen of a State different from Defendant. Furthermore, Plaintiffs allege the amount in controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiffs allege the number of members of all proposed plaintiff classes in the aggregate is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

41. This Court has personal jurisdiction over Sinemia for reasons including but not limited to the following: Sinemia's principal executive office is in California. As a result, Sinemia has continuous and systematic ties with California such that it is essentially at home here, meaning the Court has general *in personam* jurisdiction over Sinemia.

**Venue**

42. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because Sinemia, the only defendant, resides within this District. 28 U.S.C. § 1391(b)(1), (d).

**Intradistrict Assignment**

43. Assignment to the San Francisco Division is appropriate under Civil Local Rule 3-2(c) and (d) because a substantial part of the events or omissions which gave rise to Plaintiff Yeh's claims occurred within San Francisco County, including Mr. Yeh's purchase of a Sinemia Subscription from Defendant.

**ALLEGATIONS COMMON TO ALL CLAIMS OF THE TERMINATION CLASS**

44. Defendant offers pre-paid Subscription services that enable Subscription purchasers to obtain discount tickets to movies playing in theaters.

45. Subscription purchasers may obtain the discount tickets using Sinemia's app.

46. Sinemia offers, or has offered, Subscription plans of various durations, including Subscriptions that are billed monthly, Subscriptions that are billed every three months, and Subscriptions that are billed annually.

47. Sinemia's marketing and sale of the Subscriptions led Plaintiff Yeh,Rynca the Termination Class to believe the Subscriptions would last for the full length of the advertised Subscription term (e.g., month, three months, or a year).

48. In accordance with their belief as created by Defendant that their Subscriptions would last for the full length of the advertised Subscription term, Plaintiffs Yeh and Rynca and the Termination Class members each purchased Sinemia Subscriptions from Defendant.

49. The Termination Class members subsequently prematurely had their Subscriptions terminated. Many of the Termination Class received a notice, the language and substance of which

was materially similar to the following:

> Dear Sinemia member,
>
> This is an important notice that requires your attention.
>
> Our top priority is to provide our members with the best movie-going experience possible in the most affordable way. In order to achieve this goal, it is very important for our members to comply with the membership rules and abide by the terms of service.
>
> Sinemia has put several systems and measures in place in order to prevent fraud and keep Sinemia's membership sustainable and affordable.
>
> Upon reviewing your account, we regret to inform you that the system has detected examples of your membership use that violates the terms of service. As a result, your account has been terminated. An account may be terminated, but not limited to, for the following reasons:
>
> - Unauthorized use of the Sinemia card/cardless outside of its intended purposes, resulting in fraudulent financial activity
> - The use of multiple Sinemia accounts in the same device resulting in financial abuse
> - Reasonable suspicion of fraud and/or abuse
> - Sharing one's Sinemia membership information to purchase tickets for other persons.
> - Manipulation of location data resulting in deceptive ticket purchases
>
> You may review the usage terms of your account on our website if you would like to seek further information. Given the circumstances, please note that you will not be able to create further accounts with Sinemia.
>
> Best regards,
> Sinemia
>
> Sinemia issues a full refund for the difference between a user's membership payment & fees and ticket purchases to the user`s payment card.

50.     Sinemia terminated the Subscriptions of members of the Termination Class members without proper cause.  In fact, the justification for the termination was a sham.

51.     Sinemia did not offer the Termination Class members full or sufficient refunds.

52. On March 4, 2019, Business Insider reported that Sinemia had "been on a spree of terminating accounts over the past few days" and that in doing so, Sinemia had sent the holders of the terminated Subscriptions a form letter. https://www.businessinsider.com/moviepass-competitor-sinemia-is-terminating-accounts-2019-3. Business Insider stated that "Sinemia [was] terminating accounts, and some subscribers are bewildered and upset." *Id.* It reported that Subscription holders had contacted it and stated that their Subscriptions had been cancelled unfairly. *Id.*

53. On March 8, 2019, Engadget reported that Sinemia was "terminating accounts and users don't know why." https://www.engadget.com/2019/03/08/sinemia-user-accounts-terminated/. According to Engadget, Sinemia's Subscription holders aid they were "being wrongfully kicked from the service for 'fraudulent activity.'" *Id.* Engadget reported that consumers had stated that Sinemia's accusations of "fraudulent activity" were "untrue and unfair." *Id.* Engadget reported that Sinemia told it that Sinemia "has uncovered more than a thousand variations of fraud and has improved its fraud detection systems accordingly." *Id.*

54. On March 14, 2019, WCPO Cincinnati reported that Sinemia was terminating Sinemia Subscriptions and sending out a form letter regarding the termination, even though the Subscription holders had done nothing fraudulent or otherwise inappropriate or unauthorized. https://www.wcpo.com/money/consumer/dont-waste-your-money/sinemia-a-moviepass-competitor-terminating-members-suddenly.

55. Sinemia possesses a strong ulterior motive to terminate its Subscription holders' accounts prematurely because it generates substantial revenue for Simemia.

**ALLEGATIONS COMMON TO ALL CLAIMS OF THE FORCED CHARGES CLASS**

56. Plaintiff Braun and each of the Forced Charges Class members (i) purchased a Sinemia Subscription from Defendant, (ii) cancelled the Subscription, (iii) obtained a refund of the purchase price of the Subscription from their bank or another third party, (iv) were charged again by Defendant, and (v) did not obtain a refund for the subsequent charge.

57. Plaintiff Braun and the Forced Charges Class members never consented to the

subsequent charges identified above.

58. Thus, Sinemia has unilaterally, unreasonably, unjustifiably, inexcusably and wrongfully taken Plaintiff Braun's and the Forced Charges Class members' money.

59. Ms. Braun is not the only consumer whose money Sinemia has simply taken, without justification or authorization.

60. For example, on April 13, 2019, a disappointed consumer posted the following on reddit.com:

> **Sinemia charged me again after my bank granted me a refund.**
>
> I was a part of the mass cancellations in March. Sinemia even blocked my access to my account so I couldn't log in to file a refund or change my card information. I filed a dispute with Synchrony bank, which they eventually granted a full refund and closed the dispute. Yesterday I saw Sinemia charged me AGAIN for a full year (after only providing 5 months of service). I filed another dispute with my bank, but what can I do to prevent another charge?

https://www.reddit.com/r/Sinemia/comments/bcup7h/sinemia_charged_me_again_after_my_bank_granted_me/.

## CLASS ACTION ALLEGATIONS

### THE TERMINATION CLASS

61. Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Henry Yeh brings this action on behalf of a proposed class defined as follows:

> **The Nationwide Termination Class.** All persons who:
>
> Purchased during the period from April 19 2015, to the date of class certification a Sinemia Subscription from Defendant that Defendant terminated prior to the end of the Subscription period,

62. Additionally, pursuant to Rule 23(a), (b)(2), and (b)(3), Mr. Yeh brings this action on behalf of a proposed subclass defined as follows:

> **The California Termination Subclass.** All California residents who:
>
> Purchased during the period from April 19 2015, to the date of class certification a Sinemia Subscription from Defendant that Defendant terminated prior to the end of the Subscription period,

63. Additionally, pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff Jeremy Rynca brings this action on behalf of a proposed subclass defined as follows:

> **The Michigan Subclass.** All Michigan residents who:
>
> Purchased during the period from April 19 2013, to the date of class certification a Sinemia Subscription from Defendant that Defendant terminated prior to the end of the Subscription period,

64. Collectively, the Nationwide Termination Class, the California Termination Subclass, and the Michigan Subclass are the "Termination Class."

65. Excluded from the Termination Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Termination Class in accordance with Court-approved procedures.

66. Plaintiffs Yeh and Rynca reserve the right to alter the Termination Class definitions as they deem necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Northern District of California, and applicable precedent allow.

67. Certification of the claims of Plaintiffs Yeh and Rynca for class-wide treatment is appropriate because Plaintiffs Yeh and Rynca can prove the elements of the claims on a class-wide basis using the same evidence as individual Termination Class members would use to prove those elements in individual actions alleging the same claims.

68. Numerosity; Rule 23(a)(1): The size of the Termination Class is so large that joinder of all Termination Class members is impracticable. Due to the nature of Defendant's business and the conduct at issue, Plaintiffs Yeh and Rynca believe there are hundreds, if not thousands, of Termination Class members geographically dispersed throughout the United States, including throughout California and Michigan.

69. Existence and Predominance of Common Questions of Law and Fact; Rule 23(a)(2), (b)(3): There are questions of law and fact common to the Termination Class. These questions predominate over any questions that affect only individual Termination Class members.

70. All Termination Class members were subjected to the same pattern of activity by Defendant, namely: all Termination Class members had their Subscriptions prematurely terminated the Subscription.

71. Furthermore, common legal and factual questions include but are not limited to:

a. whether Defendant engaged in the course of conduct alleged herein;

b. whether Defendant's conduct is likely to deceive a reasonable consumer acting reasonably in the circumstances;

c. whether Defendant's conduct constitutes an unlawful, unfair, or fraudulent act or practice;

d. whether Defendant violated the California and Michigan consumer protection statutes set forth below;

e. whether Defendant breached its Subscription contracts with Plaintiffs Yeh and Rynca and the Termination Class members by unilaterally and prematurely terminating their Subscriptions;

f. whether Defendant breached the implied covenant of good faith and fair dealing by prematurely terminating the Subscriptions of Plaintiffs Yeh and Rynca and the Termination Class members;

g. whether Defendant was unjustly enriched by its conduct;

h. whether Plaintiffs Yeh and Rynca and the Termination Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

i. whether Plaintiffs Yeh and Rynca and the Termination Class members are entitled to injunctive relief, including public injunctive relief, or equitable relief, including equitable restitution.

72. Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs Yeh and Rynca seek to enforce individually and on behalf of the Termination Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous

common questions that dominate this action. Moreover, the common questions will yield common answers that will materially advance the litigation.

73.     Typicality; Rule 23(a)(3): The claims of Plaintiffs Yeh and Rynca are typical of the claims of the Termination Class members because Defendant injured all Termination Class members through the uniform misconduct described herein; all Termination Class members were subject to Defendant's unfair and deceptive business practices, including Defendant's premature termination of their Sinemia Subscriptions; and Plaintiffs Yeh and Rynca seek the same relief as the Termination Class members.

74.     Furthermore, there are no defenses available to Defendant that are unique to Plaintiffs Yeh or Rynca.

75.     Adequacy of Representation; Rule 23(a)(4): Plaintiffs Yeh and Rynca are each a fair and adequate representative of the Termination Class because each of these Plaintiffs' interests do not conflict with the Termination Class members' interests.

76.     Plaintiffs Yeh and Rynca have selected competent counsel that are experienced in class action and other complex litigation.

77.     Plaintiffs Yeh  and Rynca will prosecute this action vigorously and are highly motivated to seek redress against Defendant. Plaintiffs Yeh and Rynca and their counsel are committed to prosecuting this action vigorously on behalf of the Termination Class and have the resources to do so.

78.     Injunctive or Declaratory Relief; Rule 23(b)(2): The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Termination Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Termination Class as a whole.

79.     Superiority; Rule 23(b)(3): The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

        a.     The damages individual Termination Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

b. It would be virtually impossible for the Termination Class members individually to redress effectively the wrongs done to them. Even if Termination Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c. The prosecution of separate actions by the individual members of the Termination Class would create a risk of inconsistent or varying adjudications with respect to individual Termination Class members, which would establish incompatible standards of conduct for Defendant.

d. The prosecution of separate actions by individual Termination Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Termination Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

80. Notice: Plaintiffs Yeh and Rynca and their counsel anticipate that notice to the proposed Termination Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

**THE FORCED CHARGES CLASS**

81. Pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff Kathy Braun brings this action on behalf of a proposed class defined as follows:

**The Nationwide Forced Charges Class.** All persons who:

(i) purchased a Sinemia Subscription from Defendant,

(ii) cancelled the Subscription,

(iii) obtained a refund of the purchase price of the Subscription from their bank or another third party,

(iv) were charged again by Defendant, and

(v) did not obtain a refund for the subsequent charge,

during the period from April 19, 2015, to the date of class certification.

82.    Additionally, pursuant to Rule 23(a), (b)(2), and (b)(3), Ms. Braun brings this action on behalf of a proposed subclass defined as follows:

**The California Forced Charges Subclass.** All persons who:

(i) purchased a Sinemia Subscription from Defendant in California,

(ii) cancelled the Subscription,

(iii) obtained a refund of the purchase price of the Subscription from their bank or another third party,

(iv) were charged again by Defendant, and

(v) did not obtain a refund for the subsequent charge,

during the period from April 19, 2015, to the date of class certification.

83.    Together, the Nationwide Forced Charges Class and the California Forced Charges Subclass are the "Forced Charges Class."

84.    Excluded from the Forced Charges Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Forced Charges Class in accordance with Court-approved procedures.

85.    Plaintiff Braun reserves the right to alter the Forced Charges Class definitions as she deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Northern District of California, and applicable precedent allow.

86.    Certification of Plaintiff Braun's claims for class-wide treatment is appropriate because Ms. Braun can prove the elements of the claims on a class-wide basis using the same evidence as individual Forced Charges Class members would use to prove those elements in individual actions alleging the same claims.

87. Numerosity; Rule 23(a)(1): The size of the Forced Charges Class is so large that joinder of all Forced Charges Class members is impracticable. Due to the nature of Defendant's business and the conduct at issue, Plaintiff Braun believes there are hundreds, if not thousands, of Forced Charges Class members geographically dispersed throughout the United States, including throughout California.

88. Existence and Predominance of Common Questions of Law and Fact; Rule 23(a)(2), (b)(3): There are questions of law and fact common to the Forced Charges Class. These questions predominate over any questions that affect only individual Forced Charges Class members.

89. All Forced Charges Class members were subjected to the same pattern of activity by Defendant, namely: (i) they purchased a Sinemia Subscription from Defendant, (ii) they cancelled the Subscription, (iii) they obtained a refund of the purchase price of the Subscription from their bank or another third party, (iv) they were charged again by Defendant, and (v) they did not obtain a refund for the subsequent charge.

90. Furthermore, common legal and factual questions include but are not limited to:

a. whether Defendant engaged in the course of conduct alleged herein;

b. whether Defendant's conduct is likely to deceive a reasonable consumer acting reasonably in the circumstances;

c. whether Defendant's conduct constitutes an unlawful or unfair act or practice;

d. whether Defendant violated the California consumer protection statutes set forth below;

e. whether Defendant converted the funds of Plaintiff Braun and the Forced Charges Class members in violation of California law;

f. whether Defendant was unjustly enriched by its retention of the funds of Plaintiff Braun and the Forced Charges Class members, in violation of California law;

g. whether Plaintiff Braun and the Forced Charges Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

h.    whether Plaintiff Braun and the Forced Charges Class members are entitled to injunctive relief or equitable relief, including equitable restitution.

91.    Defendant engaged in a common course of conduct in contravention of the laws Plaintiff Braun seeks to enforce individually and on behalf of the Forced Charges Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will materially advance the litigation.

92.    Typicality; Rule 23(a)(3): Plaintiff Braun's claims are typical of the claims of the Forced Charges Class members because Defendant injured all Forced Charges Class members through the uniform misconduct described herein, and Plaintiff Braun seeks the same relief as the Forced Charges Class members.

93.    Furthermore, there are no defenses available to Defendant that are unique to Plaintiff Braun.

94.    Adequacy of Representation; Rule 23(a)(4): Plaintiff Braun is a fair and adequate representative of the Forced Charges Class because Ms. Braun's interests do not conflict with the Forced Charges Class members' interests.

95.    Plaintiff Braun has selected competent counsel that are experienced in class action and other complex litigation.

96.    Plaintiff Braun will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Plaintiff Braun and her counsel are committed to prosecuting this action vigorously on behalf of the Forced Charges Class and have the resources to do so.

97.    Injunctive or Declaratory Relief; Rule 23(b)(2): The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Forced Charges Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Forced Charges Class as a whole.

98.    Superiority; Rule 23(b)(3): The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but

not limited to the following:

a. The damages individual Forced Charges Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

b. It would be virtually impossible for the Forced Charges Class members individually to redress effectively the wrongs done to them. Even if Forced Charges Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c. The prosecution of separate actions by the individual members of the Forced Charges Class would create a risk of inconsistent or varying adjudications with respect to individual Forced Charges Class members, which would establish incompatible standards of conduct for Defendant.

d. The prosecution of separate actions by individual Forced Charges Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Forced Charges Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

99. Notice: Plaintiff Braun and her counsel anticipate that notice to the proposed Forced Charges Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS

## FIRST CLAIM

**Violation of California's Consumers Legal Remedies Act**
**CAL. CIV. CODE § 1750 *et seq.***
**By Plaintiff Henry Yeh, on Behalf of the Termination Class**
**Seeking Injunctive Relief Only**

100. Plaintiff Henry Yeh repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

101. Plaintiff Yeh brings this claim against Sinemia on behalf of the Termination Class for violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* (the "CLRA").

102. This claim is for injunctive relief only, pursuant to California Civil Code section 1782(d).

103. The CLRA prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

104. Sinemia designed its policies, acts, and practices to, and the policies, acts, and practices did, result in Mr. Yeh and the Termination Class members purchasing and using Sinemia Subscriptions primarily for personal, family, or household purposes.

105. Sinemia has violated the following sections of the CLRA:

a. section 1770(a)(5), which prohibits representing that goods or services have characteristics, uses, or benefits that they do not have;

b. section 1770(a)(9), which prohibits advertising goods or services with intent not to sell them as advertised; and

c. section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

106. As discussed above, Plaintiff Yeh and the Termination Class members each purchased a Sinemia Subscription from Defendant and had their Subscription prematurely terminated.

107. Sinemia's marketing and sale of the Subscriptions to Plaintiff Yeh and the

Termination Class members was likely to deceive a reasonable consumer because a reasonable consumer would believe a Subscription would last for the full length of the advertised Subscription term (e.g., month, three months, or a year) and would not be prematurely terminated by Sinemia; in fact, Defendant did prematurely terminate the Subscriptions of Plaintiff Yeh and the Termination Class members, as detailed herein.

108. As a result, in accordance with California Civil code section 1780(a)(2), Mr. Yeh and the Termination Class members have suffered irreparable harm and seek injunctive relief.

109. Pursuant to section 1782 of the CLRA, Plaintiff Yeh hereby notifies Sinemia in writing of its particular violations of section 1770 of the CLRA (the "Notice") and demands, among other actions, that Sinemia correct, repair, replace, or otherwise rectify the Sinemia Subscriptions that are in violation of section 1770 as set forth above. If Defendant fails to respond to Plaintiff Yeh's demand within 30 days of this Notice, pursuant to section 1782 of the CLRA, Plaintiffs will amend this Class Action Complaint to request, in addition to the above relief, statutory damages, actual damages, punitive damages, interest, and reasonable attorneys' fees and costs.

110. Therefore, Plaintiff Yeh prays for relief as set forth below.

**SECOND CLAIM**

**Violation of California's False Advertising Law**
**CAL. BUS. & PROF. CODE § 17500 *et seq.***
**By Plaintiff Henry Yeh, on Behalf of the Termination Class**

111. Plaintiff Henry Yeh repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

112. Plaintiff Yeh brings this claim against Sinemia on behalf of the Termination Class for violation of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* (the "FAL").

113. The FAL prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." CAL. BUS. & PROF. CODE § 17500.

114. In reliance on Defendant's false and misleading claims indicating the Sinemia

Subscriptions would last for the full length of the advertised Subscription terms (e.g., month, three months, or a year), Plaintiff Yeh and the Termination Class members purchased and used Sinemia Subscriptions.

115. As discussed above, Plaintiff Yeh and the Termination Class members each purchased a Sinemia Subscription from Defendant and subsequently had their Subscription prematurely terminated.

116. Sinemia's marketing and sale of the Subscriptions to Plaintiff Yeh and the Termination Class members was likely to deceive a reasonable consumer because a reasonable consumer would believe a Subscription would last for the full length of the advertised Subscription term (e.g., month, three months, or a year) and would not be prematurely terminated by Sinemia; in fact, Defendant did prematurely terminate the Subscriptions of Plaintiff Yeh and the Termination Class members, as detailed herein.

117. Sinemia knew or should have known that its marketing was likely to deceive a reasonable consumer because Sinemia would be unable to provide the Sinemia Subscription services for the full length of the advertised Subscription terms to Plaintiff Yeh and the Termination Class members.

118. Mr. Yeh and the Termination Class members seek declaratory relief, injunctive relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, and other relief allowable under California Business and Professions Code section 17535.

119. Therefore, Plaintiff Yeh prays for relief as set forth below.

## THIRD CLAIM

### Violation of California's Unfair Competition Law
### CAL. BUS. & PROF. CODE § 17200 *et seq.*
### By Plaintiff Henry Yeh, on Behalf of the Termination Class

120. Plaintiff Henry Yeh repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

121. Plaintiff Yeh brings this claim against Sinemia on behalf of the Termination Class for violation of the "unlawful," "unfair," and "fraudulent" prongs of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

122.    The circumstances giving rise to the allegations of Plaintiff Yeh and the Termination Class members include Defendant's corporate policies regarding the marketing, sale, and provision of Sinemia Subscriptions.

123.    The UCL prohibits "unfair competition," which it defines to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." CAL. BUS. & PROF. CODE § 17200.

124.    By engaging in the acts and practices described above, Sinemia committed one or more acts of "unfair competition" as the UCL defines that term.

125.    First, as detailed herein, Sinemia's acts, misrepresentations, omissions, and practices violate the FAL and the CLRA, and they constitute breach of contract under California law, breach of the implied warranty of good faith and fair dealing under California law, and unjust enrichment under California law. On account of each of these violations of law, Sinemia has also violated the "unlawful" prong of the UCL.

126.    Second, Defendant has committed "unfair" business acts or practices by, among other things:

a.    engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff Yeh and the Termination Class members;

b.    engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff Yeh and the Termination Class members; and

c.    engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Class Action Complaint.

127.    Third, Defendant committed "unlawful," "unfair," and/or "fraudulent" business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive reasonable consumers, including Plaintiff Yeh and the Termination Class members.

128.    In reliance on Defendant's false and misleading claims indicating the Sinemia Subscriptions would last for the full length of the advertised Subscription terms (e.g., month, three

months, or a year), Plaintiff Yeh and the Termination Class members purchased and used Sinemia Subscriptions.

129.    As discussed above, Plaintiff Yeh and the Termination Class members each purchased a Sinemia Subscription from Defendant and had their Subscription prematurely terminated.

130.    Sinemia's marketing and sale of the Subscriptions to Plaintiff Yeh and the Termination Class members was likely to deceive a reasonable consumer because a reasonable consumer would believe a Subscription would last for the full length of the advertised Subscription term (e.g., month, three months, or a year) and would not prematurely terminated by Sinemia; in fact, Defendant did prematurely terminate the Subscriptions of Plaintiff Yeh and the Termination Class members, as detailed herein.

131.    Sinemia knew or should have known that its marketing was likely to deceive a reasonable consumer because Sinemia would be unable to provide the Sinemia Subscription services for the full length of the advertised Subscription terms to Plaintiff Yeh and the Termination Class members.

132.    Plaintiff Yeh and the Termination Class members seek declaratory relief, restitution for monies Sinemia wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, and other relief allowable under California Business and Professions Code section 17203.

133.    Therefore, Plaintiff Yeh prays for relief as set forth below.

## FOURTH CLAIM

**Unjust Enrichment under California Law**
**By Plaintiff Henry Yeh, on Behalf of the Termination Class**

134.    Plaintiff Henry Yeh repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

135.    Plaintiff Yeh brings this claim against Sinemia on behalf of the Termination Class for unjust enrichment under California law.

136.    Under California law, the elements of a claim of unjust enrichment are: (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another.

137.    As set forth above, Plaintiff Yeh and the Termination Class members each purchased a Sinemia Subscription from Defendant and subsequently Defendant prematurely terminated their Subscription.

138.    Defendant received a monetary benefit when it prematurely terminated the Sinemia Subscriptions of Plaintiff Yeh and the Termination Class members because Plaintiff Yeh and the Termination Class members had prepaid for their Subscriptions in full and Defendant did not provide them with full or sufficient refunds. For the reasons described herein, the monetary benefits that Sinemia obtained from Plaintiff Yeh and the Termination Class members are to the determent of Plaintiff Yeh and the Termination Class members and violate fundamental principles of justice, equity, and good conscience.

139.    Such monetary benefits constitute unjust enrichment of Defendant, and it would be inequitable under the circumstances for Defendant to retain the benefits it has received.

**140.**    Therefore, Plaintiff Yeh prays for relief as set forth below.

**FIFTH CLAIM**

**Violation of the Michigan Consumer Protection Act**
**MICH. COMP. LAWS ANN. § 445.901 *et seq.***
**By Plaintiff Jeremy Rynca, on Behalf of the Michigan Subclass**

141. Plaintiff Jeremy Rynca repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

142. Plaintiff Rynca brings this claim against Sinemia on behalf of the Michigan Subclass for violation of the Michigan Consumer Protection Act, MICH. COMP. LAWS ANN. § 445.901 *et seq.*

143. The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." *Id.* § 445.903(1).

144. Under the Michigan Consumer Protection Act, "[t]rade or commerce" means "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." MICH. COMP. LAWS ANN. § 445.902(1)(g).

145. Sinemia designed its policies, acts, and practices to, and the policies, acts, and practices did, result in Plaintiff Rynca and the Michigan Subclass members purchasing and using Sinemia Subscriptions primarily for personal, family, or household purposes.

146. The MCPA is much broader than the common law tort of fraud, covering not only deceptive practices but also unfair and unconscionable conduct.

147. Sinemia has violated the Michigan Consumer Protection Act by committing the unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce set forth below:

a. represented that goods or services have characteristics, uses, or benefits that they do not have, MICH. COMP. LAWS ANN. § 445.903(1)(c);

b. advertised or represented goods or services with intent not to dispose of those goods or services as advertised or represented, *id.* § 445.903(1)(g);

c. failed to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, *id.* § 445.903(1)(s);

d.    made a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, *id.* § 445.903(1)(bb); and

e.    failed to reveal facts that are material to the transaction in light of representations of fact made in a positive manner, *id.* § 445.903(1)(cc).

148.    In reliance on Defendant's false and misleading claims indicating the Sinemia Subscriptions would last for the full length of the advertised Subscription terms (e.g., month, three months, or a year), Plaintiff Rynca and the Michigan Subclass members purchased and used Sinemia Subscriptions.

149.    As discussed above, Plaintiff Rynca and the Michigan Subclass members each purchased a Sinemia Subscription from Defendant and Defendant prematurely terminated their Subscription.

150.    Sinemia's marketing and sale of the Subscriptions to Plaintiff Rynca and the Michigan Subclass members was likely to deceive a reasonable consumer because a reasonable consumer would believe a Subscription would last for the full length of the advertised Subscription term (e.g., month, three months, or a year) and would not be prematurely terminated by Sinemia; in fact, Defendant did prematurely terminate the Subscriptions of Plaintiff Rynca and the Michigan Subclass members, as detailed herein.

151.    Sinemia knew or should have known that its marketing was likely to deceive a reasonable consumer because Sinemia would be unable to provide the Sinemia Subscription services for the full length of the advertised Subscription terms to Plaintiff Rynca and the Michigan Subclass members.

152.    Plaintiff Rynca and the Michigan Subclass seek declaratory relief, injunctive relief, damages, and any other relief the Court deems appropriate. MICH. COMP. LAWS ANN. § 445.911.

153.    Therefore, Plaintiff Rynca prays for relief as set forth below.

## SIXTH CLAIM

**Violation of California's Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200 *et seq.***
**By Plaintiff Kathy Braun, on Behalf of the Forced Charges Class**

154. Plaintiff Kathy Braun repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

155. Plaintiff Braun brings this claim against Sinemia on behalf of the Forced Charges Class for violation of the "unlawful" and "unfair" prongs of the UCL.

156. The circumstances giving rise to the allegations of Plaintiff Braun and the Forced Charges Class members include Defendant's corporate policies regarding the marketing, sale, and provision of Sinemia Subscriptions.

157. The UCL prohibits "unfair competition," which it defines to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." CAL. BUS. & PROF. CODE § 17200.

158. By engaging in the acts and practices described above, Sinemia committed one or more acts of "unfair competition" as the UCL defines that term.

159. First, as detailed herein, Sinemia's acts, misrepresentations, omissions, and practices with respect to Plaintiff Braun and the Forced Charges Class members constitute conversion and unjust enrichment under California law. On account of both of these violations of law, Sinemia has also violated the "unlawful" prong of the UCL.

160. Second, Defendant has committed "unfair" business acts or practices by, among other things:

a. engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff Braun and the Forced Charges Class members;

b. engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff Braun and the Forced Charges Class members; and

c. engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Class Action Complaint.

161. As set forth above, Plaintiff Braun and each of the Forced Charges Class members

(i) purchased a Sinemia Subscription from Defendant, (ii) cancelled the Subscription, (iii) obtained a refund of the purchase price of the Subscription from their bank or another third party, (iv) were charged again by Defendant, and (v) did not obtain a refund for the subsequent charge.

162. Sinemia unilaterally, unreasonably, unjustifiably, inexcusably, arbitrarily, and wrongfully took Plaintiff Braun's and the Forced Charges Class members' money when it imposed the subsequent charges identified above on Plaintiff Braun and the Forced Charges Class members.

163. Plaintiff Braun and the Forced Charges Class members never consented to the subsequent charges identified above.

164. Plaintiff Braun and the Forced Charges Class members seek declaratory relief, restitution for monies Sinemia wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, and other relief allowable under California Business and Professions Code section 17203.

165. Therefore, Plaintiff Braun prays for relief as set forth below.

**SEVENTH CLAIM**

**Conversion under California Law**
**By Plaintiff Kathy Braun, on Behalf of the Forced Charges Class**

166. Plaintiff Kathy Braun repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

167. Plaintiff Braun brings this claim for conversion under California law against Sinemia on behalf of the Forced Charges Class.

168. Under California law, the elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.

169. Under California law, money can be the subject of an action for conversion if a specific sum capable of identification is involved.

170. Plaintiff Braun and the Forced Charges Class members each owned and/or had the right to possess money.

171. As set forth above, Plaintiff Braun and each of the Forced Charges Class members

(i) purchased a Sinemia Subscription from Defendant, (ii) cancelled the Subscription, (iii) obtained a refund of the purchase price of the Subscription from their bank or another third party, (iv) were charged again by Defendant, and (v) did not obtain a refund for the subsequent charge.

172. Sinemia unilaterally, unreasonably, unjustifiably, inexcusably, arbitrarily, and wrongfully took Plaintiff Braun's and the Forced Charges Class members' money when it imposed the subsequent charges identified above on Plaintiff Braun and the Forced Charges Class members.

173. Plaintiff Braun and the Forced Charges Class members never consented to the subsequent charges identified above.

174. Each of the subsequent charges identified above is a specific sum capable of identification. Upon information and belief, the specific sums may be identified by means including but not limited to reviewing Sinemia's records of charges it has imposed.

175. Plaintiff Braun and the Forced Charges Class members have suffered damages in the form of the money that Sinemia wrongfully took from them when it subsequently charged them as set forth above.

176. Therefore, Plaintiff Braun prays for relief as set forth below.

## EIGHTH CLAIM

**Unjust Enrichment under California Law**
**By Plaintiff Kathy Braun, on Behalf of the Forced Charges Class**

177. Plaintiff Kathy Braun repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

178. Plaintiff Braun brings this claim for unjust enrichment under California law against Sinemia on behalf of the Forced Charges Class.

179. Under California law, the elements of a claim of unjust enrichment are: (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another.

180. As set forth above, Plaintiff Braun and each of the Forced Charges Class members (i) purchased a Sinemia Subscription from Defendant, (ii) cancelled the Subscription, (iii) obtained a refund of the purchase price of the Subscription from their bank or another third party, (iv) were charged again by Defendant, and (v) did not obtain a refund for the subsequent charge.

181. Defendant received a benefit, i.e., money, when it imposed the subsequent charges identified above on Plaintiff Braun and the Forced Charges Class members.

182. For the reasons described herein, the monetary benefits that Sinemia obtained from Plaintiff Braun and the Forced Charges Class members by means of its imposition of the subsequent charges identified above on Plaintiff Braun and the Forced Charges Class members are to the determent of Plaintiff Braun and the Forced Charges Class members and violate fundamental principles of justice, equity, and good conscience.

183. Such monetary benefits constitute unjust enrichment of Defendant, and it would be inequitable under the circumstances for Defendant to retain the benefits it has received.

184. Therefore, Plaintiff Braun prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Termination Class and the Forced Charges Class, respectfully request that the Court enter an Order:

A. certifying the proposed Termination Class and Forced Charges Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendant is financially responsible for notifying the members of the Termination Class and the Forced Charges Class of the pendency of this suit;

C. declaring that Defendant has committed the violations of law alleged herein;

D. providing for any and all injunctive relief, including public injunctive relief, the Court deems appropriate;

E. awarding statutory damages in the maximum amount for which the law provides;

F. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G. providing for any and all equitable monetary relief the Court deems appropriate;

H. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I. awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

J. awarding pre- and post-judgment interest to the extent the law allows; and

K. providing such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

Date: *April 19, 2019*

Respectfully submitted,

**REESE LLP**

By: *_/s/ Michael R. Reese_*

Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

- and -

8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs Henry Yeh, Jeremy Rynca, and Kathy Braun and the Proposed Class*